FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 08 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------- x

ANN M. JUSINO and RAMON K. JUSINO,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

----------------------------------------------- x

MEMORANDUM AND ORDER

No. 14 Civ. 3617 (ENV) (ST)

VITALIANO, D.J.

*Pro se* plaintiffs Ann M. Jusino and Ramon K. Jusino brought this action, individually and on behalf of their minor son, W.J., against defendant New York City Department of Education ("DOE"), to appeal administrative proceedings finding that W.J. was provided a free appropriate public education ("FAPE") within the meaning of the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The parties have cross-moved for summary judgment, and plaintiffs also move for sanctions against DOE. (Pls. Mot., ECF No. 21; Def. Mot., ECF No. 25; Pls. Sanctions Mot., ECF No. 36). For the reasons that follow, plaintiffs' motions for summary judgment and sanctions are denied; defendant's motion for summary judgment is granted.

The Object, Intent and Enforcement of IDEA

A brief overview of IDEA and its procedures will be helpful in grasping the significance of the background facts. The common good public intention of IDEA was to, *inter alia*, "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). "In practice, this means that States have an affirmative obligation to

provide a basic floor of opportunity for all children with disabilities[,] . . . an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015)).

To realize these goals, school districts in states accepting federal funding under IDEA must create an individualized education program ("IEP") for each disabled student. *See, e.g.*, *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 174 (2d Cir. 2012). The IEP includes "measurable annual goals" for academic and functional performance. 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(II). For an IEP to be timely, it must be "in effect by the beginning of the school year." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 194 (2d Cir. 2005); *see* 34 C.F.R. § 300.323(a).

New York parents who believe that their child was denied FAPE may file a request for due process proceedings ("DPR") and receive a hearing before an impartial hearing officer ("IHO"). N.Y. Educ. Law § 4404(1). There is a 30-day resolution period following the filing of the DPR, after which the IHO has 45 days in which to issue a decision. 34 C.F.R. §§ 300.510(b), 300.515(a), (c); N.Y. Comp. Codes R. & Regs. tit. 8, §§ 200.5(j)(3)(iii), (5)(i). As relevant to the disputes discussed below, parties may "[p]rohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing." 34 C.F.R. § 300.512(a)(3); *see* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(3)(xii).

The IHO's determination may be appealed to a state review officer ("SRO"). N.Y. Educ. Law § 4404(2). A party aggrieved by the SRO's decision may seek judicial review in federal or state court. 20 U.S.C. § 1415(f)-(g), (i); N.Y. Educ. L. § 4404(2).

Parents, additionally, have an alternate path to protecting what they believe are their child's FAPE rights. They may elect to unilaterally enroll their child in a private school and seek

retroactive tuition reimbursement, but this decision is made "at their own financial risk." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 111 (2d Cir. 2007). Subject to limitations,[1] "a court or a hearing officer may require the agency to reimburse the parents for the cost of [private school] enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii).

## Background

At the start of the 2013-2014 school year, W.J. was a 9-year-old student classified as having autism. (Defs. 56.1 ¶ 1, ECF No. 26; Pls. 56.1 ¶ 1, ECF No. 23).[2] W.J's IEP for the 2013-2014 school year, dated May 23, 2013, recommended a 12-month education program and that, among many other goals, W.J. would, by the end of the school year, be able to "negotiate 80 feet throughout the building, without loss of balance 80% of the time," and "climb and descend 1 flight of stairs, step over step, without railing and while maintaining his head in neutral posture 80% of the time." (Def. 56.1 ¶¶ 2, 4-5; IEP at 6-13, ECF No. 44-10).

DOE sent plaintiffs a final notice of recommendation ("FNR"), dated June 14, 2013 (which was received on June 17, 2013), identifying P.S. 373R, on Staten Island, as W.J.'s placement school for the 2013-2014 school year. (Defs. 56.1 ¶ 6; Pls. 56.1 ¶¶ 16, 33-35; DPR at 6, ECF No. 44-1). DOE also sent plaintiffs a summer placement letter, dated June 15, 2013

---

[1] *See* 20 U.S.C. § 1412(a)(10)(C)(iii) (reimbursement may be denied if the parents did not comply with certain notice and evaluation procedures, or otherwise acted unreasonably).

[2] The cited portions of the parties' 56.1 statements are not controverted. Additionally, notice pursuant to Local Rule 56.2, which is generally provided to *pro se* parties opposing a motion for summary judgment, was neither provided nor necessary in this case. As discussed *infra*, pages 7-8, though denominated by the parties as motions for summary judgment, the substantive motion each party filed is properly understood as an appeal from an administrative hearing. The relevant evidence is the administrative record, which W.J.'s parents used to support their 56.1 statement. The Court views the respective 56.1 statements as additional statements of argument based on the administrative record.

(which was received on June 19, 2013), identifying P.S. 373R as W.J.'s summer placement school for July and August 2013, with classes to begin on July 3, 2013. (Pls. 56.1 ¶¶ 36-43; DPR at 6).

Both plaintiffs visited P.S. 373R on June 24, 2013. (Pls. 56.1 ¶ 49). On July 1, 2013, they rejected DOE's plan by unilaterally re-enrolling W.J. at the Seton Foundation for Learning ("Seton"), the private school he had previously attended. (Pls. 56.1 ¶ 28). On or around July 3, 2013, W.J.'s parents sent a DPR to DOE. (Defs. 56.1 ¶ 7). It set forth, *inter alia*, their grievance that W.J. had been and was continuing to be denied FAPE because he had received notice of his placement school after June 15, and because P.S. 373R allegedly lacked the facilities to meet W.J.'s physical therapy goals, specifically that the hallways were too small and the single-story structure had no internal flight of stairs. (DPR at 3-6, 11-12).

The DPR claimed, which was expressed with more clarity in the parents' later appeal to the SRO, that a 1988 consent decree entered in *Jose P. v. Ambach*, 557 F. Supp. 1230 (E.D.N.Y. 1983) (Nickerson, J.), requires DOE to issue FNRs by June 15 to students in 12-month programs. (DPR at 2; Pls. SRO Pet. at 2, 6-7, ECF No. 44-14).[3] The parents contended that, due to the late notice provided to them, they were entitled to, but did not receive, a Nickerson Letter, a document named after our late colleague Judge Eugene H. Nickerson, that would authorize placement in an approved non-public school. (DPR at 2). Though, in any event, it is uncontested that Seton is not an approved private school. (Def. 56.1 ¶ 7).

---

[3] While there were numerous stipulations filed in *Jose P.*, the Court understands the parties to be referring to *Jose P. v. Sobol*, No. 79 Civ. 270, 79 Civ. 560, 79 Civ. 2562 (EHN) (E.D.N.Y. Aug. 3, 1988) (addressing June 15 and August 15 deadlines at page 33) (*available at* http://www.advocatesforchildren.org/sites/default/files/on_page/jose_p_stipulation_july_1988.pdf).

A due process hearing triggered by the DPR was held on December 9, 13 and 17, 2013. (Defs. 56.1 ¶ 12). Ramon Jusino attended the hearing on behalf of plaintiffs. The proceedings on December 9, 2013, primarily concerned plaintiffs' request to subpoena P.S. 373R's principal, assistant principal, and security supervisor. (Hr'g Tr. 1 at 5:1-4, 8:23-9:2, ECF No. 44-3). The parents also objected, unsuccessfully, to DOE being permitted to call Assistant Principal Maria Dinneny. They rested their objection on the grounds that DOE had not noticed her testimony at least five days before the hearing. (*Id.* at 5:21-8:21, 37:1-6; Hr'g Tr. 2 at 47:17-19). After permitting Dinneny's testimony on December 13, 2013, the IHO determined that the testimony of the principal and security supervisor was unnecessary cumulative testimony. (*Id.* at 12:11-13:2, 18:6-21; Hr'g Tr. 2 at 142:13-145:18, ECF No. 44-5; IHO Interim Dec. at 1, ECF No. 44-12).

Concerning the 45-day deadline for the IHO's decision, during the December 9, 2013 hearing, the IHO raised the possibility of adjourning the proceedings to February 2014, but, after plaintiffs objected to further delay, the IHO made himself available on December 13, 2013. (Hr'g Tr. 1 at 19:9-20:16, 33:8-22). The parties then discussed the 45-day deadline, and plaintiffs consented to an enlargement of the disposition timetable less the IHO, in practical reality, be forced to refer the matter to another IHO. (*Id.* at 20:1-24:10, 35:9-37:3). As it turned out, plaintiffs would later consent to a second extension of the disposition deadline. (Hr'g Tr. 2 at 156:19-157:3).

When litigation at the administrative proceeding turned to substance, Dinneny testified that the facilities used to implement stair-climbing goals included the stairs "leading to the main building," as well as "a little wooden model of stairs" in the therapy room with approximately

"three steps." (Hr'g Tr. 2 at 60:12-61:5, 69:25-71:23).[4] If the weather was too cold to use the outdoor stairs, the student "would practice inside the [physical therapy] room [o]n the model of stairs . . . ." (*Id.* at 71:5-12). Testifying as to her professional opinion, Dinneny's view was that W.J. would meet his stair-climbing goal by practicing on the model stairs. (*Id.* 117:8-17). As she explained, "[t]hat goal isn't unique" and she had "many students who have stair climbing goals." (*Id.* at 70:15-25). In addition, Dinneny stated that W.J.'s goal of walking a set number of feet could be accomplished using an available hallway. (*Id.* at 61:6-11, 69:6-24).

On January 7, 2014, the IHO issued a decision in DOE's favor, finding that it had offered W.J. FAPE for the 2013-2014 school year. (Defs. 56.1 ¶ 14). The determination rested, in large part, on the IHO's finding that, while "[t]he placement offer was made four days late," the procedural shortcoming did not result in the denial of FAPE, and that plaintiffs' concerns about "the specific building," were not a valid basis for declining the placement. (IHO Dec. at 2, 4, ECF No. 44-13). The IHO did not otherwise address plaintiffs' physical therapy concerns.

Plaintiffs appealed this decision solely on the basis that their son was denied FAPE because the FNR was not received by June 15. (Pls. SRO Pet. at 2). DOE filed a cross-appeal, asserting that the IHO's decision was erroneous to the extent that it held that the IDEA should be interpreted to contain a June 15 deadline for 12-month students. (Defs. 56.1 ¶ 23). Notwithstanding the limited scope of plaintiffs' appeal, DOE went on to argue that P.S. 373R was capable of implementing W.J.'s IEP. (Defs. SRO Cross-Appeal at 6, ECF No. 44-15). Plaintiffs, in their reply, offered the counter argument that P.S. 373R lacked the facilities

---

[4] The assistant principal also mentioned the availability of stairs "outside in our school yard." (Hr'g Tr. 2 at 60:20-21). Though immaterial to resolution, the testimony is unclear whether these are the same stairs as the stairs to the main building.

necessary for W.J.'s physical therapy goals due to the cramped hallway and lack of internal stairs. (Pls. SRO Reply at 3-5, ECF No. 44-16).

By decision, dated April 16, 2014, the SRO upheld the IHO's finding that DOE had offered W.J. FAPE, but overturned that portion of the IHO's decision finding that DOE was required to provide a FNR by June 15. (Defs. 56.1 ¶ 26). The SRO concluded that DOE complied with federal and state regulations by providing the IEP and FNR before the start of the school year. (SRO Dec. at 10, ECF No. 44-18). He reasoned, further, that neither he nor the IHO had jurisdiction to determine whether W.J. was a member of the class in *Jose P.*, such that the consent decree might apply in W.J.'s case. (*Id.* at 8). He also noted that plaintiffs sought "to extend relief beyond *Jose P.* to tuition reimbursement at Seton," a non-approved school. (*Id.* at 10 n. 8). Finally, the SRO declined to address whether P.S. 373R could meet W.J.'s physical therapy goals, because the issue was not raised by plaintiffs in their initial appeal, and the SRO did not find that, in this instance, DOE had "opened the door" by addressing the school's ability to implement the IEP. (*Id.* at 5 n.5). In an unnecessary hike around the failure to raise any issue or argument about the school facility for appellate review since the IHO had made no findings against DOE on that point, the SRO reasoned that whether the placement school could implement the IEP was speculative if the student did not attend the school. (*Id.*). In any event, it was a door the SRO's decision left closed.

Plaintiffs filed the present action seeking review of the SRO's decision and, ultimately, tuition reimbursement.

<u>Standard of Review</u>

"Though the parties in an IDEA action may call the procedure [for judicial review] 'a motion for summary judgment,' the procedure is in substance an appeal from an administrative

determination, not a summary judgment [motion]." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012). A court must make its determination based on a preponderance of the evidence, after engaging in "an independent review of the administrative record." *Gagliardo*, 489 F.3d at 112. This is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982). Indeed, courts may not make "'subjective credibility assessment[s],' and cannot 'ch[oose] between the views of conflicting experts on . . . controversial issue[s] of educational policy . . . in direct contradiction of the opinions of state administrative officers who had heard the same evidence.'" *M.H.*, 685 F.3d at 240 (quoting *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 383 (2d Cir. 2003)). While maintaining "an acute awareness of institutional competence and role," courts will give due weight to an SRO's decision that evidences the qualities "that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id.* at 244.

<u>Statutory Standard</u>

Under what is known as the *Burlington/Carter*[5] test, tuition reimbursement is appropriate when "(1) the school district has provided an 'inadequate or inappropriate' placement; (2) the parents' selected program is appropriate, such that the private program meets the student's special education needs; and (3) the equities favor the parents. *P.K. ex rel. S.K. v. N.Y.C. Dep't*

---

[5] *See Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985).

*of Educ. (Region 4)*, 819 F. Supp. 2d 90, 98 (E.D.N.Y. 2011) *aff'd*, 526 F. App'x 135 (2d Cir. 2013). "[T]he local school board bears the initial burden of establishing the validity of its plan at a due process hearing," and, should the school board fail to carry this burden, then, in order for the parents to succeed, they must bear and meet "the burden of establishing the appropriateness of their private placement and that the equities favor them." *R.E.*, 694 F.3d at 184-85 (citing N.Y. Educ. L. § 4404(1)(c)).

Although a substantively inadequate IEP "automatically entitles the parents to reimbursement," *id.* at 190, procedural inadequacies only amount to a denial of FAPE if they

> (I) impeded the child's right to a free appropriate public education;
> (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
> (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii); *see T.K.*, 810 F.3d at 875. "Multiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not." *R.E.*, 694 F.3d at 190.

## Discussion

### I. The Cross-Motions for Judgment

There is no dispute that the written IEP was sufficient to ensure W.J.'s FAPE. Plaintiffs direct their fire at its implementation, contending that W.J. was denied FAPE due to various procedural violations and the selection of P.S. 373R as his placement school. Specifically, the parents argue, to recapitulate, that (1) the FNR was untimely and violated the *Jose P.* consent decree, (2) the IHO was required to preclude Assistant Principal Dinneny's testimony and permit them to move immediately for summary judgment, (3) the IHO's decision was not issued within the 45-day window for decision, and (4) P.S. 373R lacked the facilities to implement W.J.'s

physical therapy goals. (Pls. Mem. 4-12, 12-23, ECF No. 24). DOE counters that the *Jose P.* consent decree is immaterial because it does not apply to this action and W.J. was offered, dispositively, notwithstanding anything else, FAPE at P.S. 373R. (Defs. Mem. 10-26, ECF No. 27).

Setting aside for the moment the issue of whether P.S. 373R affords W.J. a placement compliant with IDEA and spotlighting assigned procedural errors, to the extent plaintiffs rely on the 1988 *Jose P.* consent decree, it must be kept in mind that, "[a]s a general rule, a consent decree such as this can be enforced only by a party, a party's privy, or an intended beneficiary." *M.S. ex rel. M.S. v. N.Y.C. Dep't of Educ.*, 734 F. Supp. 2d 271, 279 (E.D.N.Y. 2010); *see R.E.*, 694 F.3d at 192 n.5. The *Jose P.* action was initiated "to ensure prompt evaluation and placement" of disabled students, and certified a class that included "all handicapped children between the ages of five and twenty-one living in New York City whom the Board [now known as DOE] has been notified . . . may be handicapped and who have not been evaluated within thirty days or placed within sixty days of such notification." *Jose P.*, 557 F. Supp. at 1239-40; *see L.V. v. N.Y.C. Dep't of Educ.*, No. 03 Civ. 9917 (RJH), 2005 WL 2298173, at *7 (S.D.N.Y. Sept. 20, 2005) ("*Jose P.* addresses the initial placement process.").

The parents do not allege that W.J. is a member of this class. Instead, they argue that the consent decree applies to "*every* student referred for special education in New York City." (Pls. Opp. Mem. at 23-24, ECF No. 30; *see* Defs. Mem. at 21-22). This argument ignores Second Circuit guidance that "the *Jose P.* stipulation does not apply" to students who are not members of the certified class, *i.e.*, students who were not evaluated within 30 days or placed within 60 days

of initial notification. *R.E.*, 694 F.3d at 192 n.5.[6] Moreover, the 1988 consent decree utilizes a June 15 deadline only for certain "[s]tudents who will first become eligible for enrollment in school-aged programs by virtue of becoming five years old prior to the ensuing December 31st." *Jose P.*, No. 79 Civ. 270, 79 Civ. 560, 79 Civ. 2562 (EHN) (E.D.N.Y. Aug. 3, 1988) (Stipulation at 33). As to all other students, eligibility "to enroll in an approved non-public school" was limited to instances where no site offer was made by August 15. *Id.*[7] Putting it another way, the June 15 deadline, at best, applies on a student's entry into the special education network and the initial evaluation for IEP, not to subsequent changes in services or placements.

Moreover, even had plaintiffs been entitled to a Nickerson Letter, it would not have resulted in reimbursement for tuition at Seton, which, it stands uncontroverted, is a non-approved school. Despite its widespread and well-deserved reputation for excellence on Staten Island, the schools of the Seton Foundation are not "approved" for IDEA purposes. W.J.'s parents do not controvert that Seton is non-approved. Instead, they argue, that where a student is wrongly

[6] Several district courts reached the same conclusion, before and after *R.E. See F.L. ex rel. F.L. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5131 (RKE), 2012 WL 4891748, at *12 (S.D.N.Y. Oct. 16, 2012) (same), *aff'd*, 553 F. App'x 2 (2d Cir. 2014); *E. Z.-L. ex rel. R.L. v. N.Y.C. Dep't of Educ.*, 763 F. Supp. 2d 584, 594 (S.D.N.Y. 2011) (same), *aff'd*, 694 F.3d 167 (2d Cir. 2012); *A.L. v. N.Y.C. Dep't of Educ.*, 812 F. Supp. 2d 492, 505 (S.D.N.Y. 2011) (same); *M.S.*, 734 F. Supp. 2d at 279 (same); *see also K.L. ex rel. M.L. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 3733 (KBF), 2012 WL 4017822, at *13 (S.D.N.Y. Aug. 23, 2012) ("[A] remedy for violation of the [*Jose P.*] order would lie with the Court that entered it, not in a separate proceeding."), *aff'd*, 530 F. App'x 81 (2d Cir. 2013); *P.K.*, 819 F. Supp. 2d at 101 (same); *see generally E.H. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 3535 (RWS), 2016 WL 631338, at *5 (S.D.N.Y. Feb. 16, 2016) (discussing the *Jose P.* stipulation, but declining to determine whether it applied). Furthermore, the *Jose P.* consent decree is not binding to the extent it conflicts with subsequent Second Circuit precedent. *See F.L.*, 2012 WL 4891748, at *12; *R.K. ex rel. R.K. v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 4478 (KAM) (RLM), 2011 WL 1131492, at *17 (E.D.N.Y. Jan. 21, 2011), *R. & R. adopted*, No. 09 Civ. 4478 (KAM) (RLM), 2011 WL 1131522 (E.D.N.Y. Mar. 28, 2011), *aff'd*, 694 F.3d 167 (2d Cir. 2012); *W.T. & K.T. ex rel. J.T. v. Bd. of Educ. of Sch. Dist. of N.Y.C.*, 716 F. Supp. 2d 270, 289 (S.D.N.Y. 2010).

[7] Plaintiffs further allege the June 15 deadline was adopted by DOE on its website. The webpage to which plaintiffs refer no longer appears to be active. (Pls. Mem. 5 (citing to http://schools.nyc.gov/ Academics/SpecialEducation/SEP/determination/timeline.htm)).

denied a Nickerson letter, parents may then enroll their child with *any* private service provider and be automatically entitled to tuition reimbursement regardless of whether the provider is approved. (Pls. Mem. at 6-7, 10-12). There is simply no authority for that proposition. Parents enrolling their children in an unapproved school like Seton with all else favoring reimbursement of tuition under *Jose P.* would still not be entitled to reimbursement. The *Jose P.* claim asserted by plaintiffs fails on that ground alone. *See, e.g. Jennifer D. ex rel. Travis D. v. N.Y.C. Dep't of Educ.*, 550 F. Supp. 2d 420, 426 n.6, 427 (S.D.N.Y. 2008) (the plaintiff was unable to use her Nickerson Letter to attend an unapproved school).

It is not the lone road block. Assuming for argument's sake the existence of a June 15 Nickerson deadline, the purportedly late FNR did not amount to a denial of FAPE in this case. Parents are hardly handed unilateral rights under IDEA. For example, parents have no right to select the placement school or "to visit a proposed school or classroom before the recommendation is finalized or prior to the school year." *S.F. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 870 (DLC), 2011 WL 5419847, at *12-13 (S.D.N.Y. Nov. 9, 2011). At bottom, procedural violations in and of themselves do not amount to a *per se* denial of FAPE. In point of law, a causal connection must be shown. The grievant must show how the procedural deficiency "impeded the child's right to a free appropriate public education" or "significantly impeded the parents' opportunity to participate in the decisionmaking process." 20 U.S.C. § 1415(f)(3)(E)(ii); *see T.K.*, 810 F.3d at 875. It has happened. A court in this circuit, in fact, recently held that an FNR issued one business day before the start of the school year denied the parent a meaningful opportunity to participate in the placement process. *See, e.g.*, *E.H.*, 2016 WL 631338, at *5.

In contrast to that case finding a causal link between the timing of notice and the denial of FAPE, the Second Circuit has held that an IEP (which usually precedes the FNR) mailed on a Thursday, with school beginning five days later on a Tuesday, did not constitute a denial of FAPE when the parents were involved in other aspects of the process. *Cerra*, 427 F.3d at 190, 193-94. That precedent hobbles plaintiffs' claim. Plaintiffs had approximately two weeks to investigate P.S. 373R. Although not entitled to visit the school as a matter of right, they were both able to do so within a few days, and they re-enrolled W.J. at Seton before the beginning of the school year. Bluntly, other than the charged violations of the Nickerson deadline, plaintiffs have not alleged or shown how the late receipt of the FNR letters on June 17 and 19, 2013, in any way affected much less denied FAPE or an opportunity to litigate administratively about FAPE.

The remaining procedural violations alleged, individually and collectively, run into the same road block. They do not constitute the denial of FAPE nor of the parents' fair right to administratively challenge DOE's placement to achieve it. Permitting Assistant Principal Dinneny to testify for DOE and denying plaintiffs' request to move immediately for summary judgment did not violate any of plaintiffs' substantive due process rights relating to whether plaintiffs could participate in the decisionmaking process. Like all procedural rules and deadlines, those set in this sort of administrative proceeding were set to ensure a fair and expedited process, not a summary "gotcha" game. No prejudice from the failure to notice Assistant Principal Dinneny's testimony five days before the hearing (as opposed to the four

days' notice given before her testimony) was articulated.[8] Indeed, the parents had already moved to subpoena her along with the other P.S. 373R administrators.

Case law's emphasis on substantial vindication of substantive rights and ensuring a fair opportunity to participate is equally present in resolving disputes arising out of the decision deadline date. With respect to the 45-day deadline, "relief is warranted only if . . . [a] forty-five-day rule violation affected [the student's] right to a free appropriate public education." *J.D. ex rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 69 (2d Cir. 2000); *see A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 840 F. Supp. 2d 660, 689 n.15 (E.D.N.Y. 2012) (same), *aff'd*, 513 F. App'x 95 (2d Cir. 2013). Plaintiffs did not obtain a faster hearing because, as they recognize, several prior IHOs were forced to recuse themselves, and plaintiffs later consented to two extensions of that deadline. (Pls. Mem. at 22).[9] In any event, by the time the alleged procedural deficiencies occurred, plaintiffs had already elected to re-enroll W.J. at Seton, and they have not demonstrated that his right to FAPE or their right to participate was affected in any way.

This brings us to the plaintiffs' final argument in which they contend that there was one substantive deficiency in the program for W.J.'s IEP: the lack of facilities to implement his physical therapy goals at P.S. 373R. Although the parents initially neglected to raise this issue

---

[8] Without making any findings on the issue, the SRO stated, in a footnote, that, when interpreting the regulations to the statute preceding IDEA, the United States Department of Education stated that "the names of witnesses to be called and the general thrust of their testimony should be disclosed." (SRO Dec. at 4 n.3 (quoting *Letter to Bell*, 211 IDELR 166 (OSEP 1979))).

[9] According to the IHO, an "unusually large volume of hearings" was causing delays and recusals, and "[t]he only p[eople] hurt [are] actually the child and the family," such that "it would be healthy for somebody to bring this to some court's attention that could do something about it." (Hr'g Tr. 1 at 20:1-24:10). Notably, DOE recently cleared a backlog of over 200 appeals pending before SROs. *See K.C. v. N.Y.C. Educ. Dep't*, No. 13 Civ. 5910 (PGG), 2015 WL 5784905, at *15 (S.D.N.Y. Sept. 30, 2015); *M.G. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 296, 305 (S.D.N.Y. 2014). Plaintiffs, it must be pointed out, did not rely upon this as a ground for relief, nor, more importantly, does the record reflect that any delay, regardless its cause, resulted in substantive or litigation prejudice to plaintiffs.

on appeal to the SRO, DOE, presumably in an effort to bolster its position, did argue, in a purported cross appeal, that P.S. 373R was capable of implementing the IEP. *See, e.g.*, *M.H.*, 685 F.3d at 250-51 (finding that DOE had opened the door to issues not raised in the DPR). Especially given the *pro se* status of the parents once issue had been joined by their response to DOE's bolstering, it would have been better for the SRO to squarely address the issue rather than avoid the substance. (SRO Dec. at 5 n.5). The Court may assign less weight to the SRO's procedural determination on this decision to sidestep the issue even though it might not have properly been preserved for review. *M.H.*, 685 F.3d at 24. Moreover, there certainly would have been no prejudice to DOE had he addressed an issue that it sought to raise, was briefed before the SRO, and was thoroughly litigated before the IHO.

At the core of their grievance was the parents' belief that P.S. 373R could not implement W.J.'s stair-climbing goals because it lacked an internal flight of stairs, and its one hallway was too small to implement his walking goals. Obviously, a school lacking the ability to implement a student's IEP cannot be an appropriate placement for that student. *See M.O.*, 793 F.3d at 244 ("While it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." (internal citations omitted)). By way of example, the Second Circuit cited with approval a finding that "an IEP recommending a seafood-free environment, for a child with a life threatening seafood allergy, could not be implemented at a proposed school that was not seafood free." *Id.* (citing *D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ.*, 950 F. Supp. 2d 494, 513 (S.D.N.Y. 2013)). Whether misapprehended by the SRO and DOE or not, it is the argument, plaintiffs

make here. (SRO Dec. at 5 n.5; Def. Mem. 17). To be sure, it was what the administrative proceeding was all about.

By not squarely addressing the substantive adequacy of the placement, the SRO let stand the findings of the IHO on this substantive issue, which is entitled to deference, for the well-reasoned analysis is "informed by greater educational expertise than that of judges." *M.H.*, 685 F.3d at 246; *see R.E.*, 694 F.3d at 189. Specifically, the IHO found that the school district had credibly demonstrated its expertise, which was not controverted by any outside expert, to find that the IEP could in fact be implemented at P.S. 373R and to dismiss plaintiffs' self-supported objections "based on a building tour." (IHO Dec. at 4). The IHO's determination was supported in the record by Dinneny's testimony that W.J. would be able to satisfy his physical therapy goals using the standard physical therapy model stairs, the outdoor stairs, and building hallway. Pointedly, again, plaintiffs offer no evidentiary basis for second-guessing the educator's opinion, a matter within her expertise and assignment relating to the tools and methods for physical therapy. The IHO did properly rely upon it.[10]

At the end of the day, "[t]he relevant inquiry is [] not whether the Placement Classroom provided all possible support[, . . . ] but rather whether objective evidence indicated that [the student] was likely to progress, not regress, under the proposed plan." *S.F.*, 2011 WL 5419847, at *18. An internal flight of stairs used by all building occupants might or might not be a preferable therapeutic methodology, but, even if so, schools are not required to provide "every special service necessary to maximize each handicapped child's potential." *Rowley*, 458 U.S. at

---

[10] Attacking from a different angle, though misconstruing the law, plaintiffs argue that Dinnney's testimony should have been found to be prohibited retrospective testimony. (Pls. Mem. 15-16). Retrospective testimony is "testimony that certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement." *R.E.*, 694 F.3d at 185. The prohibition does not apply to testimony, such as that provided in this case, "that explains or justifies the services listed in the IEP." *Id.*

199. In short, plaintiffs have provided no basis in evidence or law to support a finding that the facilities available at P.S. 373R could not be used to implement the IEP. Having failed to establish that W.J. was denied a free appropriate public education, the remaining prongs of the *Burlington/Carter* test need not be addressed.

II. Plaintiffs' Motion for Sanctions

The sanctions motion rests on DOE's acknowledged failure to adhere to the five-day disclosure rule concerning Dinneny's testimony. (Pls. Sanctions Mem. at 1, ECF No. 38). Civil Rule 11 controls and provides that the court may sanction litigants and/or their lawyers for filings presented for an improper purpose or which contain frivolous legal contentions, factual contentions that lack support, or factual contentions that are unlikely to have support after an opportunity for discovery. Fed. R. Civ. P. 11(b)-(c). "With respect to legal contentions, '[t]he operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands.'" *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011)). "With regard to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)).

Having reviewed the allegedly sanctionable legal and factual contentions (*see* Pls. Sanctions Mem. at 6-10), it is painfully plain that the assertions of fact or law about which plaintiffs complain are neither frivolous nor unsupported. DOE has succeeded in the underlying action upon the sufficiency of some of the very assertions plaintiffs challenge in their sanctions motion. The motion is denied.

## Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment on the administrative record is denied and defendant's motion for summary judgment is granted. Plaintiffs' motion for sanctions is denied.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

Dated: Brooklyn, New York
July 14, 2016

/s/ USDJ ERIC N. VITALIANO

ERIC N. VITALIANO
United States District Judge